UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RANDALL HIGHTOWER,                  :
    Plaintiff,                     :

V.                                   :       CASE No. 3:11-cv-1619(RNC)

HARTFORD LIFE & ACCIDENT            :
INSURANCE CO.,                       :
    Defendant.                     :

<u>RULING AND ORDER</u>

    Plaintiff, Randall Hightower, brings this action under the
Employee Retirement Income Security Act of 1974 ("ERISA"), 29
U.S.C. § 1331 *et seq*, against the claims fiduciary of his
employer's disability insurance plan, Hartford Life and Accident
Insurance Company ("Hartford").  Plaintiff alleges that
Hartford's termination of his long-term disability benefits and
failure to provide him with certain documents relevant to his
claim both violate ERISA.  Hartford has filed a motion for
summary judgment (ECF No. 34), arguing that its administrative
determination was reasonable and supported by substantial
evidence in the administrative record and that ERISA's disclosure
requirement does not apply because it is not a "plan
administrator" as defined by the statute.  Plaintiff has filed a
cross-motion for summary judgment (ECF No. 39).  For the reasons
that follow, Hartford's motion is granted and plaintiff's motion
is denied.

I.  Background

In opposing Hartford's motion for summary judgment,
plaintiff has failed to file a Local Rule 56(a)2 Statement.
Accordingly, the material facts set forth in the defendant's
Local Rule 56(a)1 Statement (ECF No. 35), taken from the
administrative record, are deemed admitted.  See Sanchez v. Univ.
of Conn. Health Care, 292 F. Supp. 2d 385, 390 (D. Conn. 2003).

A. The Plan

Plaintiff began working for the American International Group
("AIG") in 2006 as a Workman's Compensation Claims Reviewer.
This occupation required plaintiff to sit for seven hours, stand
for half an hour, and walk for one hour, with the opportunity to
alternate sitting and standing as needed.  Administrative Record
("AR") 422.  AIG employees are covered by a Group Long Term
Disability Plan ("the Plan") that provides long-term disability
("LTD") benefits under an insurance policy issued to AIG by
Hartford.  See AR 461-500.  AIG is the sole "Plan Administrator"
named in the Plan.  AR 494.  The Plan designates Hartford as its
"claims fiduciary" and grants Hartford "full discretion and
authority to determine eligibility for benefits and to construe
and interpret [the Plan's] terms and provisions."  Id.

The Plan states, in pertinent part: "Disability or Disabled
means . . . you are prevented from performing one or more of the
Essential Duties of Your Occupation, and as a result your Current

2

Monthly Earnings are less than 80% of your Indexed Pre-disability earnings."  AR 481.  The Plan requires employees to provide documentation of their disability that is "satisfactory to [Hartford]" and authorizes Hartford to require employees to be examined by a medical professional of Hartford's choice to assist with Hartford's disability determination.  AR 477.  The Plan also provides that Hartford "will terminate benefit payments on the first to occur of: 1. the date [the employee is] no longer disabled as defined; . . . [or] 7. the date no further benefits are payable under any provision in [the Plan] that limits benefits duration."  AR 469.  Plan benefits payable for a mental illness are limited to "a total of 24 months for all such Disabilities during [the insured's] lifetime."  Id.

B. *Plaintiff's Initial Disability Claim*

     In May 2008, plaintiff stopped working for AIG when he was hospitalized for a mental illness.  AR 443.  Plaintiff's treating physician, Dr. Ellyssa Eror, diagnosed him with bipolar disorder and schizoaffective disorder.  AR 436.  Plaintiff applied for disability benefits in June 2008 and Hartford approved his claim in November of that year stating "[w]ith your benefits commencing on November 10, 2008, no benefits will be payable beyond November 9, 2010."  AR 132.

     On January 9, 2009, Dr. Eror wrote that plaintiff was "socially and cognitively impaired for any work activity," but

that no other medical condition impacted on his ability to function.  AR 413.  In January 2010, Hartford received an Attending Physician's Statement ("APS") from Dr. Eror noting that plaintiff was reporting back pain, AR 355, as well as a report dated August 2009 from a neurosurgeon, Dr. Kvam, stating that plaintiff had been referred by Dr. Eror with "significant localized low back pain."  AR 359.  The Kvam report also stated that plaintiff was a "fit, muscular . . . man" and that although "the patient was prescribed physical therapy, [he] evidently did not attend.  He found the co-pay prohibitive."  Id.

On May 19, 2010, Hartford again notified plaintiff that the twenty-four month limitation period for his mental illness disability benefits would be reached on November 9 and advised him to "immediately provide [Hartford] with any evidence of [a] disabling physical condition" that would entitle him to additional benefits.  AR 100.  Hartford also notified plaintiff of his right to administratively appeal the termination of his benefits.  Id.

Plaintiff challenged Hartford's 24-month limitation on mental illness benefits in a letter dated May 27, 2010, arguing that "a new federal law and mandate has been passed to arrest such practices."  AR 346-47.  Plaintiff did not mention any physical disability or submit any new medical evidence.  See id. Treating the letter as an administrative appeal of the impending

termination of plaintiff's benefits, Hartford reviewed his claim
and issued an appeal decision on June 22, 2010, reaffirming that
the policy limitation "will have been met as of 11/09/10 and no
further benefits will be payable after that date." AR 97.  On
September 20, 2010, plaintiff wrote to Hartford to contest its
"capricious appeal decision" and characterized his disability
claim as "due to [his] L5/S1 hernia" and "chronic ongoing back
pain." AR 222.  In this letter, plaintiff referred Hartford to
another of his attending physicians, Dr. Fejos, "to request any
medical information [necessary] . . . to continue [his] claim."
Id.

    In a letter dated September 29, 2010, Hartford informed
plaintiff that "Section 502(a) of [ERISA] entitles [employees] to
one appeal of termination of benefits" and declined to consider
his back pain claim on the grounds that his appeal had already
been processed.  AR 95.  In response, plaintiff provided Hartford
with a magnetic resonance imaging ("MRI") report dated October 3,
2010, and a letter he had sent to Dr. Eror noting a referral to a
surgeon, Dr. Spero, for a possible discectomy and claiming that
Hartford had prematurely processed his appeal and overlooked his
"medical diagnosis for the disc herniation[] and chronic pain
preventing [him] from being able to sit, stand or walk for any
significant amount of time over the past 2 years." AR 223.
Hartford's claim management report from November 3, 2010 notes

that the "MRI submitted by [claimant] indicates positive findings" of "disc herniation" "but [does] not provide physical restrictions and or limitations preventing sed[entary]/light level work."  AR 38.  Hartford sent plaintiff another letter on November 4, 2010, reiterating its position that he had exhausted the opportunity to appeal the termination of his benefits.  See AR 95.

Plaintiff persisted in challenging the termination of his benefits, informing a supervisor in Hartford's claim management department that he wanted his benefits reinstated and noting that he had contacted the Department of Labor and would contact his attorney.  AR 38.  On November 9, 2010, the day plaintiff's mental illness disability benefits expired, Hartford agreed to gather further evidence regarding plaintiff's back condition and review his disability claim.  AR 37, 93.  Hartford requested medical records from Dr. Fejos and Dr. Spero and agreed to continue plaintiff's benefits under a reservation of rights while it investigated his claim.  AR 92.

C.  *Investigation Into Plaintiff's Physical Disability Claim*

The administrative record indicates that plaintiff first went to Dr. Fejos on July 19, 2010 for an evaluation of low back pain he claimed originated from an injury in January 2009.  AR 233.  Dr. Fejos's intake notes show that plaintiff had an MRI on October 1, 2009, which revealed evidence of a small L5-S1 disc

herniation.  Id.  Dr. Fejos recommended a trial of epidural steroid injections.  Id.  Dr. Fejos's case notes from August 24, 2010, report no improvement following two steroid injections and recommend physical therapy for plaintiff, noting that "he has not had [physical therapy] in the past for his symptoms."  AR 231. Dr. Fejos's notes state that plaintiff reported his low back pain to be "currently a 7 out of 10" on the pain scale, but that he was "in no acute distress" and that he would be referred to Dr. Spero for a surgical consultation.  AR 232-33.  An APS of functionality prepared by a physician's assistant ("PA") in Dr. Fejos's office, Tammy Gaines, concluded that in a general workplace environment plaintiff could sit, stand and walk for one hour at a time each, for a total of two hours a day each; lift/carry up to ten pounds frequently; occasionally bend at the waist; with no restrictions on handling, fingering or reaching above shoulder or waist level.  AR 247.

Dr. Spero's intake notes from October 27, 2010 state that plaintiff claimed he injured his back in January 2009 while lifting weights.  AR 216.  Dr. Spero diagnosed plaintiff with a herniated disc as well as lumbar spondylosis and radiculitis and recommended that plaintiff undergo a "left L5-S1 discectomy." AR 218-219.  Dr. Spero advised the plaintiff that a discectomy would significantly reduce his pain, but plaintiff never underwent surgery.  See AR 172-73.

On January 4, 2011, Hartford asked plaintiff to sign a form authorizing it to obtain his medical information in connection with an independent medical examination ("IME").  AR 88.  Plaintiff sent a letter in response stating that, "due to the Schizo-effective disorder and the paranoia associated with the disorder; I will not submit [to] an overreaching medical authorization from The Hartford due to the sensitive nature of my psychological treatment with my Therapist."  AR 194.  In this letter, plaintiff also requested a "full copy of my entire file including all internal communications."  Id.

On January 27, 2011, Hartford wrote to plaintiff informing him that it was rejecting his claim for additional disability benefits.  See AR 81.  Hartford noted that the Job Description of plaintiff's occupation is sedentary, requiring the plaintiff to "sit, stand and walk with the ability to alternate positions as needed[,] frequently handle (gross motor) and constantly finger (fine motor)."  AR84.  Summarizing the medical evidence from Dr. Fejos, Dr. Spero and PA Gaines, and noting plaintiff's refusal to attend an independent medical examination, Hartford informed plaintiff that "while you have complaints of back pain with some findings, it is not documented to be of a severity to preclude you from performing a sedentary occupation with the ability to change positions as needed."  AR 85.  Concluding that the record did not show that plaintiff was "unable to perform the Essential

8

Duties of [his] Occupation on a full time basis as of 11/10/10"
Hartford notified plaintiff that it was terminating his claim for
ongoing benefits.  <u>Id.</u>  Hartford notified plaintiff he could
perfect his claim "by providing the necessary written
Authorization as soon as possible" or "appeal our decision
without providing the information." <u>Id.</u>

*D.  Plaintiff's Administrative Appeal*

On April 29, 2011, plaintiff administratively appealed
Hartford's termination of benefits.  The appeal argued that
"Hartford already has sufficient information in its possession to
warrant a continuation of the claimant's benefits notwithstanding
an IME," AR 189, and referenced and included a copy of a July 19,
2010 letter from Dr. Eror stating that plaintiff "continues to be
totally medically disabled due to his chronic low back pain."  AR
207.  On May 5, 2011, plaintiff sent Hartford an APS completed by
Dr. Eror on May 3, 2011, in which Dr. Eror concluded that
plaintiff could sit, stand and walk for less than an hour at a
time each and less than two hours each in a day.  AR 178-187.
Dr. Eror concluded that plaintiff could not work in a sedentary
occupation and that "without surgical intervention prognosis is
poor."  AR 179.  Dr. Eror's report also stated that she had been
treating plaintiff's back pain since January of 2009 and that
plaintiff's back pain was not caused "by trauma or other known or
identifiable injury."   AR 178-179.

Hartford forwarded plaintiff's claim to its appeal unit and began re-evaluating plaintiff's eligibility for LTD benefits by obtaining independent reviews of the medical evidence from Deborah Schneider, MD, board certified in Physical Medicine and Rehabilitation, and Charles Kershner, MD, board certified in Orthopedic Surgery.  In considering plaintiff's work capacity due to his back condition as of November 10, 2010, the date plaintiff no longer qualified for benefits for his mental illness, Drs. Schneider and Kershner reviewed the claim file, including all medical records, and spoke with Drs. Eror, Fejos and Spero.  The independent medical reviewers issued a Peer File Review report on June 6, 2011.  See AR 164-173.

In their report, both doctors found plaintiff's decision not to pursue surgery to be significant.  Dr Schneider noted that "the lack of follow up regarding surgery when offered, without an explanation or contraindication, suggests an ability to pursue functional activities without surgery."  AR 167.  Dr. Kershner noted that "[t]he claimant does have a legitimate medical problem, that is, a herniated lumbrosacral disc on the left [but] for some reason he has chosen not to have the surgery recommended and this could be from a variety of reasons. . . . One obvious conclusion, however, is that the pain and discomfort he was experiencing is not sufficient for him to seek a surgical remedy."  AR 171-72.  In the "Consensus Opinion" section of Dr.

Schneider's report, she notes that "In Dr. Kershner's experience, patients are seen all the time with ruptured discs.  If they are hurting badly enough, they have surgery and if not, they are able to perform sedentary work for eight hours with work accommodations which will accommodate the disc herniation."  AR 173.  The doctors also relied on PA Gaines's APS stating that plaintiff can work "two hours per day walking, two hours per day standing, [and] two hours per day sitting which totals to a six hour work day," AR 165, Dr. Fejos's statements that plaintiff had a normal gait and was able to climb on the examination table without assistance, AR 168, and Dr. Eror's statement that plaintiff was "physically . . . very fit" and "in good physical condition except for his back."  AR 171.  After summarizing the record, both Dr. Schneider and Dr. Kershner concluded that plaintiff had the capacity for full-time sedentary work up to eight hours a day, provided he had a ten pound weight lifting restriction with a two or three minute stretch break and the opportunity to change position every hour.  AR 173.

On June 14, 2011, Hartford prepared an occupation analysis of the physical demands of plaintiff's job as a claim reviewer at AIG and as performed in the national economy.  See AR 162.  The analysis concluded that plaintiff's job was classified as "sedentary with prolonged sitting," id., and the Hartford claim agent who prepared the analysis opined that the job allowed for a

"two to three minute[] stretch break every hour."  AR 159.  On the basis of the claim file, the independent medical reviews and the occupational analysis, Hartford sent plaintiff a letter on June 15, 2011, notifying him that it was upholding its determination to terminate his LTD benefits.  See AR 64-68.  The letter concluded: "Based on our review, the preponderance of the evidence supports that [you are] capable of performing Any Occupation and Your Occupation as defined by the Policy and the decision to terminate the claim was correct. As such, except for Mental Illness, [you do] not meet the definition of Disability, and the decision to limit [the] benefit payment duration due to the Disabling mental condition was correct."  AR 67.

On August 18, 2011, Hartford sent plaintiff a copy of the administrative record along with a letter informing him that "[t]o the extent that you have requested information which does not exist, or which is not relevant to the claim according to the pertinent regulations, it is not enclosed."  AR 63.

On October 20, 2011 plaintiff filed this action claiming that Hartford had wrongfully denied benefits in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1332(a)(1)(B), and failed to provide requested documentation as required by ERISA § 502(c)(1), 29 U.S.C. § 1332(c)(1).  On the basis of the administrative record, the parties have filed cross-motions for summary judgment.

12

II.   <u>Legal Standard</u>

*A.   Summary Judgment Standard*

"Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." <u>Hobson v. Metro. Life Ins. Co.</u>, 574 F.3d 75, 82 (2d Cir. 2009).  The moving party bears the burden of showing the absence of any genuine dispute as to a material fact.  <u>United Transp.  Union v. Nat'l R.R. Passenger Corp.</u>, 588 F.3d 805, 809 (2d Cir. 2009).

*B.   ERISA Standard*

Section 502(a)(1)(B) of ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." <u>Metropolitan Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 128 (2008) (citing 29 U.S.C. 1132(a)(1)(B)).  When a benefit plan "grants the administrator discretionary authority to determine eligibility benefits, a deferential standard of review is appropriate." <u>McCauley v. First Unum Life Ins. Co.</u>, 551 F.3d 126, 132 (2d Cir. 2008) (citing <u>Glenn</u>, 554 U.S. at 111)).  Under this deferential standard, the administrator's denial of benefits may not be overturned unless it was "arbitrary and capricious, meaning without reason, unsupported by substantial evidence or erroneous as a matter of law." <u>Id.</u> (internal quotation marks omitted).  "Substantial evidence is such evidence that a

reasonable mind might accept as adequate to support the conclusion reached by the administrator and . . . requires more than a scintilla but less than a preponderance." Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003) (internal quotation marks omitted); see also Hobson, 574 F.3d at 89 ("[T]he question for this court is not whether the insurer made the correct decision but whether [it] had a reasonable basis for the decision that it made." (internal quotation marks omitted)); Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995) ("This scope of review is narrow; thus we are not free to substitute our own judgment for that of the . . . [insurer] as if we were considering the issue of eligibility anew.").  In reviewing an administrator's determination under this standard, "courts are required to limit their review to the administrative record." Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995).

III.  Discussion

A.  Hartford's Denial of Plaintiff's LTD Benefits

     The Plan grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret the terms and provisions of the Policy."  AR 494. The parties agree that this language vests discretionary authority in Hartford sufficient to trigger deferential review. See Kinstler v. First Reliance Std. Life Ins. Co., 181 F.3d 243,

14

251 (2d Cir. 1999).  Accordingly, plaintiff bears the burden of

proving, by a preponderance of the evidence, that Hartford's

determination was arbitrary and capricious.  See Paese v.

Hartford Life Accident Ins. Co., 449 F.3d 435, 441 (2d Cir.

2006).

    In plaintiff's papers, he makes two distinct arguments in

support of his contention that Hartford's decision to terminate

his benefits was arbitrary and capricious: (1) that Hartford was

operating under an inherent and actual conflict of interest; and

(2) that Hartford's determination was unreasonable and not

supported by substantial evidence because Hartford ignored or

misstated the opinions of plaintiff's treating physicians and

relied instead on unsupported conclusions of the independent

medical reviewers.

    1.  No Actual Conflict of Interest

    "[A] plan under which an administrator both evaluates and

pays benefits claims creates the kind of conflict of interest

that courts must take into account and weigh as a factor in

determining whether there was an abuse of discretion, but does

not make de novo review appropriate."  McCauley, 551 F.3d at 133

(citing Glenn, 554 U.S. at 112).  The weight assigned to the

alleged conflict will differ "according to the evidence

presented."  Id.  For example:

    [W]here circumstances suggest a higher likelihood that [the
    conflict] affected the benefits decision, including, but not

limited to, cases where an insurance company administrator
has a history of biased claims administration, the conflict
of interest should prove more important (perhaps of great
importance). It should prove less important (perhaps to the
vanishing point) where the administrator has taken active
steps to reduce potential bias and to promote accuracy, for
example, by walling off claims administrators from those
interested in firm finances, or by imposing management
checks that penalize inaccurate decisionmaking irrespective
of whom the inaccuracy benefits.

Id. (internal quotation marks omitted).  "No weight is given to a
conflict in the absence of any evidence that the conflict
actually affected the administrator's decision." Durakovic v.
Building Service 32 BJ Pension Fund, 609 F.3d 133, 140 (2d Cir.
2010).

In support of his argument that Hartford denied his claim
due to a conflict of interest, plaintiff states that Hartford
"abrogated its duty as a fiduciary and abused its discretion" by
prematurely treating his May 27, 2010 letter as an appeal and
closing his file without considering evidence it had on record of
his back pain or allowing plaintiff to submit additional
evidence.  See Pl.'s Mot. Summ. J. at 13.  However, it is
undisputed that Hartford eventually reopened plaintiff's claim to
consider such evidence and that "Hartford maintains a separate
Appeal Unit for the consideration of claims that have been denied
by the Claims Department . . . charged with making an independent
assessment of the claim based on the relevant policy provisions
and all of the evidence in the claim file."  AR 72.  Courts have

16

considered similar measures to be sufficient to cure a structural conflict of interest.  See Bendik v. Hartford Life Ins. Co., 2010 WL 2730465, at *5 (S.D.N.Y. 2010), aff'd, 2011 WL 4091073 (2d Cir. 2011) ("Hartford demonstrated that it took significant steps to promote accuracy.  First, Hartford initially awarded short-term disability benefits to [plaintiff], a decision that was against its financial interest.  Hartford also assigned multiple individuals to review the recommendation, which promotes accuracy of the administrator's review process."); Fortune v. Grp. Long Term Disability Plan for Employees of Keyspan Corp., 637 F. Supp. 2d 132, 144 (E.D.N.Y. 2009) aff'd, 391 F. App'x 74 (2d Cir. 2010) ("Hartford has also created a check against the arbitrary denial of claims and sought to promote accuracy by maintaining a separate appeal unit that independently considers claims that were denied upon initial review.").  In view of the steps Hartford took to promote accuracy, the Court concludes that the record does not support a finding that an actual conflict likely influenced Hartford's decision to terminate benefits, and that Hartford's structural conflict should be given no weight in the Court's review of that decision.

   2.  *Hartford's Determination Was Supported By Substantial Evidence in the Record*

   Plaintiff argues that "Hartford did not have a reasonable basis for its decision in the face of substantial objective medical evidence that was presented and contained in the

administrative record."  Pl.'s Mot. Summ. J. at 16.  In support

of this position, plaintiff argues that Hartford ignored evidence

of the debilitating pain caused by his back injury, such as Dr.

Eror's opinion that plaintiff's "constant, persistent back  . . .

pain could impair his concentration and cognitive abilities if he

is required to work a sedentary position 8 hours per day 40 hours

a week," AR 178, and Dr. Fejos's opinion that plaintiff had a

constant pain level at all times of 6 to 8 on a scale of 10.  AR

202.  Plaintiff also points to Dr. Eror's May 3, 2011 APS

documenting that his pain was evidenced by objective indicia such

as "MRI, tenderness and decreased range of motion on exam."  AR

187.

     "[A]dministrators are not obliged to accord special

deference to the opinions of treating physicians."  Black &

Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003).  When

assessing the opinions of treating physicians, "it [is] not

unreasonable for the administrator to conclude that the only

material reason the treating physicians were reaching their

diagnoses was based on their acceptance of plaintiff's subjective

complaints: an acceptance more or less required of treating

physicians, but by no means required of the administrator."

Maniatty v. Unumprovident Corp., 218 F. Supp. 2d 500, 504

(S.D.N.Y. 2002) aff'd, 62 F. App'x 413 (2d Cir. 2003).  Although

an administrator must give "sufficient attention to [the

claimant's] subjective complaints" see Thurber v. Aetna Life Ins. Co., 712 F.3d 654, 660 (2d Cir. 2013), the administrator is not required to automatically accept such subjective complaints in the absence of objective evidence of disability.  See Hobson, 574 F.3d at 88 ("[I]t is not unreasonable for ERISA plan administrators to accord weight to objective evidence that a claimant's medical ailments are debilitating in order to guard against fraudulent or unsupported claims.").  In Maniatty, for example, even though an MRI showed that the plaintiff had a "small recurrent disc herniation" and plaintiff submitted a report from her treating physician that "plaintiff's chronic back pain is disabling her and she is unable to return to work," the court upheld the administrator's conclusion that "the purely objective evidence indicated that plaintiff should be able to work an eight-hour day, provided she changed positions and periodically stood and walked, rather than just sit."  218 F. Supp. 2d at 503-04.

Here, the administrative record reflects that Hartford considered and rejected plaintiff's complaints of pain, as reported by his treating physicians, essentially because "the pain and discomfort [plaintiff] was experiencing [was] not sufficient for him to seek a surgical remedy."  AR 170. According to Dr. Kershner's experience, if patients "are hurting badly enough, they have the surgery and if not, they are able to

perform sedentary work for eight hours with work accommodation." AR 173.  Plaintiff argues that this conclusion was "made with no supporting objective evidence" because the record "reflects testimony that [plaintiff] did in fact state 'why' he was unable to go through surgery at the time[:] he could not afford the co-pay."  Pl.'s Mot. Summ. J. at 12.  The page plaintiff cites in support of this statement, however, states only that plaintiff did not attend "physical therapy" because he found the co-pay prohibitive.  AR 359.  This evidence is insufficient to show that Hartford's conclusion was arbitrary and capricious.  The record reflects that plaintiff had little treatment for his back pain from January 2009, when he claims he injured it, to June 2010, when he had the first of two epidural steroid injections.  See AR 231.  In addition, Dr. Kvam stated that plaintiff was "fit [and] muscular" in August 2009, AR 359, and Dr. Eror stated that plaintiff "physically was very fit" in May 2011, AR 171, statements that are hard to reconcile with months of functional incapacity caused by severe pain.  In light of this objective evidence, coupled with the fact that plaintiff declined surgery even though Dr. Spero told him it would eliminate much of his pain, Hartford's conclusion was not unreasonable.[1]

_____

[1] Plaintiff seems to contend that his lumbar disc herniation, the existence of which is undisputed, makes the termination of his benefits unreasonable.  As seen in Maniatty, however, a claimant's herniated disc, without more, does not preclude a finding that the plaintiff was not disabled as defined by the

Plaintiff also argues that Hartford misinterpreted Dr. Eror's and PA Gaines's hourly work restrictions by using a "cumulative method of calculation".  Pl.'s Mot. Summ. J. at 18. For example, in the December 14, 2010 APS, in the row marked "Total hours/day" PA Gaines wrote "2" in each of the "sit", "stand" and "walk" columns to represent the number of hours plaintiff could perform these activities in a general workplace environment.  AR 247.  The independent medical reviewers interpreted this to mean that plaintiff could perform two hours of each activity each day for a total of six hours.  See AR 165. Plaintiff argues that the reviewers' interpretation is unreasonable because "PA Gaines specifically stated that [plaintiff] 'cannot sit, stand and walk for more than two hour per day.'"  Pl.'s Mot. Summ. J. at 18.  In Dr. Eror's APS completed May 3, 2011, there are conflicting representations of plaintiff's functional capacities: the report notes "< 1" in each column when asked the "number of hours at a time" plaintiff is able to "sit", "stand" and "walk" "in a general workplace environment", AR 181; "less than 2 hours" in each column when asked how long plaintiff can "sit, stand and walk in an eight hour work day (with normal breaks)", AR 182; and "1" in each column when asked how long the plaintiff "can work without pain, discomfort, swelling or any problems that could impair his

---

applicable benefits plan.  See 218 F. Supp. 2d at 503.

concentration or affect his judgment." AR 184.  The documents prepared by Dr. Eror and PA Gaines provide some support for plaintiff's argument.  Even so, given the independent reviewers' findings, Hartford could reasonably conclude that plaintiff was able to work at his sedentary occupation for eight hours a day.

Plaintiff urges that Hartford's reliance on the opinions of the independent reviewers is misplaced because they did not conduct a physical examination.  An administrator's reliance on independent Board-certified physicians is customary in evaluating ERISA claims.  See Hobson, 574 F.3d at 90 ("MetLife did not abuse its discretion by considering these trained physicians' opinions solely because they were selected, and presumably compensated, by Met-Life.").  An administrator is not required to have a claimant examined.  See id. ("[R]equiring the plan administrator to order an [independent medical examination], despite the absence of objective evidence supporting the applicant's claim for benefits, risks casting doubt upon, and inhibiting, the commonplace practice of doctors arriving at professional opinions after reviewing medical files." (internal quotation marks omitted)).[2] As plaintiff points to no medical evidence in the record calling into question the reasonableness of the conclusions of Hartford's independent medical reviewers, Hartford's reliance on their

_____

[2] This conclusion is reinforced by the evidence in the administrative record that plaintiff refused to sign Hartford's release authorizing an IME.  See AR 194.

22

opinions was not arbitrary and capricious.  See Testa v. Hartford
Life Ins. Co., 2012 WL 1701332, at *1 (2d Cir. May 16, 2012)
("[T]hat Hartford chose to credit its own doctors over Testa's
treating physicians is not, in and of itself, grounds for
reversing the determination.").

B.  *Statutory Damages Under ERISA's Disclosure Requirement*

     Plaintiff seeks to recover under 29 U.S.C. § 1132(c)(1),
which provides, in pertinent part: "Any administrator . . . who
fails or refuses to comply with a request for any information
which such administrator is required by this subchapter to
furnish to a participant or beneficiary . . . may in the court's
discretion be personally liable to such participant or
beneficiary in the amount of up to $100 a day from the date of
such failure or refusal."  "The term 'administrator' means (i)
the person specifically so designated by the terms of the
instrument under which the plan is operated."  29 U.S.C. §
1002(16)(A).  Accordingly, "liability under [§ 1132(c)] is
clearly limited to plan 'administrators.'"  Towner v. CIGNA Life
Ins. Co. of New York, 419 F. Supp. 2d 172, 185 (D. Conn. 2006)
(citing Bergquist v. Aetna U.S. Healthcare, 289 F. Supp. 2d 400,
413 (S.D.N.Y. 2003)); see also Krauss v. Oxford Health Plans,
Inc., 418 F. Supp. 2d 416, 434 (S.D.N.Y. 2005) aff'd, 517 F.3d
614 (2d Cir. 2008) ("[N]ot all fiduciaries are subject to
disclosure requirements under § 1132(c); only plan administrators

are."). Thus, even when insurers serve as claims administrators and administer some elements of a plan as fiduciaries, if they are not named as plan administrators they cannot be liable under 29 U.S.C. § 1132(c). See Krauss, 418 F. Supp. 2d at 434 ("Absent a specific declaration in Plan documents that an insurance company is the administrator, this Court cannot infer co-administrator status.").

Despite Hartford's authority to determine benefit eligibility under the Plan, it is undisputed that "[t]he Plan expressly named AIG as Plan Administrator" and "Hartford is not a Plan Administrator." Def.'s Rule 56 Statement at ¶¶ 3,4. As such, Hartford cannot be liable for damages under 29 U.S.C. § 1132(c).

IV. Conclusion

Accordingly, Hartford's motion for summary judgment (ECF No. 34) is granted and plaintiff's cross-motion for summary judgment (ECF No. 39) is denied.

So ordered this 30th day of September 2013.

/s/ RNC
Robert N. Chatigny
United Stated District Judge

24